George Lincoln HUFF, Appellant,

v.

STATE of Alaska, Appellee.

No. 3188.

Supreme Court of Alaska.

Aug. 10, 1979.

---

James D. Gilmore, Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, Justices.

## OPINION

CONNOR, Justice.

After trial by jury, George Lincoln Huff was convicted of three counts of embezzlement and one count of perjury. He was sentenced to serve three years on the embezzlement counts, and five years on the perjury count, with the sentences to run concurrently. He appeals from both the judgment of conviction and the sentences imposed.

Huff was a real estate salesman in Anchorage at the time of the financial transactions which led to his convictions. The perjury occurred in the course of civil proceedings related to these transactions. The following issues are raised on appeal:

1.  Whether the superior court erred in excusing a juror and seating an alternate juror outside the presence of the defendant;

2.  Whether the superior court erred in refusing to sever the embezzlement counts from the perjury count;

3.  Whether the superior court erred in refusing to take judicial notice of AS 08.88.361[1] and in refusing to give Huff's proposed jury instruction concerning that statute;

4.  Whether Jury Instruction No. 23[2] amounted to a directed verdict on the embezzlement counts and thereby deprived Huff of his right to trial by jury; and,

5.  Whether the sentences imposed were excessive.

In 1975, Richard and Mary McIntosh owned the Mary Mac Bakery in Anchorage. They worked in the bakery during the winters, and operated a mine in the Fairbanks area in the summers. In 1975 they decided to sell the bakery. In June of that year, they negotiated with Robert and Irene Anderson, although no sale materialized at that time. During the negotiations, the McIntoshes met George Huff, who was a friend of the Andersons and who advised them on the proposed real estate transaction.

---

1.  AS 08.88.361 provides:

    *When commission is earned.* A commission is earned when a real estate broker finds a buyer willing and able to purchase at a price and on terms set by the seller, provided negotiations with the buyer were initiated during the term of a valid listing agreement and within the time limit of the listing.

2.  Instruction No. 23 reads:

    You are instructed as a matter of law that the $6,500.00 given to the defendant in this case by the Andersons would remain the property of Robert C. and Irene A. Anderson until the closing of the real estate transaction for which the money was given to the defendant as a deposit or partial down payment.

On June 13, 1975, the McIntoshes listed the property with Huff. The listing agreement provided for the sale of the bakery, equipment, stock, and a house trailer for a total price of $140,000, with a down payment of $15,000, payments of $1,000 per month, plus nine percent interest, and a ten percent commission for Huff. After listing the property with Huff, the McIntoshes went to their mine for the summer.

Huff was a friend of Allan E. Steffen, and entered into a business partnership with Steffen in October of 1975. At trial Steffen testified that in June of 1975, Huff told him the bakery could be sold to the Andersons for $135,000 or $140,000; Steffen offered the McIntoshes $125,000 for the bakery in September of 1975. Huff suggested that Steffen purchase the bakery from the McIntoshes and then resell it to make a quick profit. Steffen signed an offer to the McIntoshes for $125,000, with eight percent interest, and a $3,000 promissory note as a down payment. He told Huff to take care of reselling the bakery.

About September 5, 1975, Huff appeared at the McIntoshes' mine and conveyed the Steffen offer. With some reluctance they accepted it. Shortly thereafter Huff negotiated a sale of the bakery from Steffen to the Andersons for $135,000, with a down payment of $13,000, of which $6,500 would be paid on possession, and $6,500 in about six months. The balance was to be paid in monthly installments of $1,100, including interest at ten percent. Huff signed the earnest money agreement on behalf of Steffen. The Andersons gave Huff a check for $6,500, payable to Sourdough Realty. Huff endorsed it and deposited it in his personal account. Between October 3rd and October 17th, Huff spent that money on personal needs.

Shortly after the Andersons signed the agreement with Steffen, they took possession of the bakery. A few days later the McIntoshes came to Anchorage, after closing their mining operation for the season. They discovered that the Andersons were in possession of the bakery. Upon comparing the McIntosh-Steffen and Steffen-Anderson

agreements they discovered that Steffen had purchased the property for $10,000 less, and at a lower interest rate, than he had sold it to the Andersons. The McIntoshes promptly filed suit against Huff, Steffen, and the Andersons, seeking to undo these transactions. During a hearing related to the McIntosh suit, Huff testified on October 27, 1975, that the $6,500 was in his trust account, when in fact it had been placed in his personal checking account and had been spent. This testimony was the basis of the perjury charge against Huff.

I

The first contention made by Huff is that the trial judge erred in excusing a juror in the absence of defendant and his counsel. On the fifth day of trial, juror Estelle Lee called the judge's secretary to report that her husband, ill with emphysema, was in the intensive care unit of a local hospital, and that she needed to be with him. Huff's attorney objected to Judge Carlson's stated intention to excuse her because he wanted to voir dire Mrs. Lee about the extent to which her ability to pay attention to the case had changed. During a recess, Judge Carlson attempted to telephone Mrs. Lee to determine the answer to this concern; he excused her during the recess on the basis of information received from a nurse at the intensive care unit who confirmed the seriousness of Mr. Lee's condition. Judge Carlson stated to counsel that it appeared clear that Mrs. Lee was unable to give her full attention to the trial.

Huff argues that the dismissal of a juror is an integral part of the trial, and that its occurrence in his absence violated the due process clauses of the Fourteenth Amendment of the Constitution of the United States and of Article I, § 7 of the Constitution of the State of Alaska, and Alaska Rule of Criminal Procedure 38(a), which directs that the defendant shall be present "at every stage of the trial, including the impaneling of the jury . . . ."

Huff relies on State v. Hannagan, 559 P.2d 1059 (Alaska 1977), to support his assertion that a violation of Rule 38 is of

constitutional dimensions and requires a new trial unless the error is harmless beyond a reasonable doubt. *Id.* at 1063, 1065. This reliance is misplaced. The language of Rule 38 does not specifically include the case at bar. In *Hannagan* we noted various cases where violations of Rule 38 amounted to harmless error. On the other hand, we have found reversible error in situations where the defendant's presence could have had an impact on the decisional process affecting the jury's deliberations. *Id.* at 1065, n. 20.

Situations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel. In *United States v. Houlihan,* 332 F.2d 8 (2d Cir. 1964), the trial judge excused a juror, a nurse, on the eighth day of trial because one of her patients had had a severe angina attack and needed her care at his home. The communication between judge and juror took place in chambers, and she was excused without waiting for counsel. On appeal, the court held that the trial judge had committed no error. *Id.* at 13. On similar facts Huff does not argue that the substitution of an alternate, whose qualifications had been approved,[3] in any way affected the impartiality of the jury which tried him.

■ In our opinion, the defendant's rights were not violated. The court had discretion to excuse the juror in light of the information it had received. *See, e. g., United States v. Lustig,* 555 F.2d 737, 745 (9th Cir. 1977). While the better practice might be to allow defendant's counsel an opportunity to question the juror about her reasons for being excused, the failure to do so did not amount to reversible error. *Houlihan v. United States, supra,* at 13; 2 Wright, Federal Practice and Procedure,

§ 388 (1969). The replacement of a juror by an alternate is committed to the sound discretion of the court, and we will reverse only for an abuse of that discretion. Such an abuse did not occur in this instance.

## II

Huff moved several times before and during trial to sever the embezzlement counts from the perjury count pursuant to Alaska Criminal Rule 14.[4] He asserted two grounds for prejudice: first, that the evidence that he was guilty of embezzlement might be used to convict him of perjury, even though that evidence would be inadmissible in a separate trial for perjury, and, second, that he wished to testify in his own defense on the embezzlement counts but not on the perjury count.

■ Huff's contention that prejudice resulted from the cumulative effect of the evidence against him on both charges is unpersuasive. When a perjury charge is joined to a related underlying offense, as it is here, proof of the perjury would be admissible as a false exculpatory statement in a separate trial for embezzlement. 2 Wigmore, *Evidence* § 278(2) (3d ed. 1940). Proof of the embezzlement also would be admissible to show motive with respect to the perjury in a separate trial on that charge. 1 Wigmore, *Evidence* § 215 (3d ed. 1940). *See, Stevens v. State,* 582 P.2d 621, 629 (Alaska 1978).

■ Several federal courts have held that denial of severance is not an abuse of discretion in situations where a perjury charge is joined to an underlying related offense. In *United States v. Jamar,* 561 F.2d 1103 (4th Cir. 1977), the defendant was charged with unlawful possession of a stolen United States treasury check, uttering that check with intent to defraud, and perjury, at a

---

**3.** Huff did not exhaust his peremptory challenges.

**4.** Huff moved to sever the perjury counts (Count IV) from the embezzlement counts (Counts I, II, and III) at the omnibus hearing, twice during the state's case in chief, and at the conclusion of the state's case in chief.

Alaska R.Crim.P. 14 provides:

*Relief from Prejudicial Joinder.* If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

preliminary hearing on those offenses. Denial of the severance was held proper because evidence of all the joined crimes would be mutually admissible in separate trials for each offense. *See, United States v. Sweig,* 441 F.2d 114 (2d Cir. 1971); *United States v. Isaacs,* 493 F.2d 1124 (7th Cir. 1974).

Huff's reliance on *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), is misplaced. There the court reversed the trial court for refusing to sever two counts of robbery from a count of homicide. The homicide occurred during one of the robberies, but the other robbery was committed at a different time and place. *Id.* 125 U.S.App.D.C. at 144, 369 F.2d at 189. The court noted the familiar principle that ordinarily in criminal trials evidence of other crimes is inadmissible because it tends to show the propensity of the defendant to commit crime generally, rather than to show the guilt of the specific crime for which the defendant is on trial. *Id.* In the case at bar, evidence of the embezzlement would have been admissible in a separate trial for perjury to show motive or intent.

Huff further contends that he was prejudiced because he wished to testify with regard to the embezzlement counts, but not with regard to the perjury count. He argues that when he took the stand to testify to the embezzlement charges, he was forced to cure the defect in the state's case-in-chief. In *Cleveland v. State,* 538 P.2d 1006 (Alaska 1975), we required that a defendant not only state the nature of the prejudice that would result from a denial of severance, as Huff admittedly has done, but that a defendant make as well a "convincing showing" of the importance of the testimony he wished to give on the other count. *Id.* at 1008; *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958 (1968), *cert. denied* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Huff made no such showing at trial.

Huff cites *Cross v. United States,* 118 U.S.App.D.C. 324, 335 F.2d 987 (1964), to support his contention that any situation in which a defendant desires to testify with regard to one count, but not to another, is so prejudicial that severance should be granted. This reading of *Cross* is far too broad, as noted by the same court in *Baker v. United States,* 131 U.S.App.D.C. at 25, 401 F.2d at 976, which we relied upon in *Cleveland v. State, supra,* at 1007–8. *Cross* can be further distinguished. As the court therein stated: "Prejudice may be developed when an accused wishes to testify on one but not on the other of two joined offenses which are clearly distinctive in time, place, and evidence." *Id.* 118 U.S. App.D.C. at 326, 335 F.2d at 989. In the case at bar, the perjury occurred in the course of concealing the underlying embezzlement, thus blurring the time and place distinctions. As discussed above, the evidence of the two charges is mutually admissible. Huff also relies on *United States v. Eason,* 434 F.Supp. 1217 (W.D.La.1977), but *Eason* is clearly distinguishable. There severance of a count of sale of marijuana from a count of perjury in a prior criminal proceeding for an unrelated offense was granted because the charges were inconsistent on the face of the indictment, in that the defendant was charged with two counts of perjury for testifying that he sold marijuana, while the third count charged him with the sale of marijuana. *Id.* at 1221. Thus, he could not refrain from testifying on the perjury charge without admitting the charge of sale of marijuana, and vice versa. Huff faced no such dilemma here.

Finally, we must recognize the valid governmental interest in the convenience of trying at the same time different crimes against the same person. *Richards v. State,* 451 P.2d 359, 362 (Alaska 1969). Because the charges arise from a continuing transaction and the evidence is mutually admissible, defendant would be no less prejudiced in separate trials, and the state would incur greater expense.

We hold that Huff was not prejudiced, and that the motions for severance were properly denied.

## III

◼ Huff argues that it was reversible error for the trial court to refuse to take judicial notice of AS 08.88.361 [5] pursuant to Alaska Rule of Civil Procedure 43(a)(1).[6] He contends that AS 08.88.361 was probative as to whether he had the requisite intent to defraud. We agree with the trial judge that the statute is "irrelevant to any fact and issue in this case." Huff was not a broker, but a real estate salesman. As a salesman, he could not earn a commission under the plain meaning of the statute. The issue was not whether he would ultimately have a claim of right to the $6500 as commission, but whether he had the right to convert it to his own use when he received it from the Andersons.

We hold that the trial court did not err in refusing to take judicial notice of AS 08.88.-361 and in failing to give the related jury instruction.

## IV

Huff contends that Instruction No. 23 [7] amounted to a directed verdict with respect to an essential element of the embezzlement count, thereby depriving him of his right to trial by jury. He argues that whose property the $6500 was at the time of conversion presents a question of fact that he had contested vigorously at trial, and that he was entitled to have the jury decide the issue. We disagree.

5. *See* n. 1, *supra.*

6. Alaska R.Civ.P. 43(a)(1) provides:
   Without request by a party, the court shall take judicial notice of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States, and of such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute.
   Appellant concedes that in order for evidence to be admissible in the form of a request for judicial notice, it must be relevant.

7. *See* n. 2, *supra.*

8. AS 08.88.331 provides:
   *Making of transactions.* A real estate salesman or associate real estate broker may make a real estate transaction only through

◼ The trial judge may present as proven fact any matter that has been affirmatively conceded or made the subject of judicial notice; American Bar Association,, Standards Relating to Trial by Jury, § 4.7(b)(iii), (Approved Draft, 1968), although decision of issues of fact must be left to the jury; *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933). In the case at bar, Instruction No. 23 simply restates the statutes governing real estate practice of which the court had previously taken notice. AS 08.88.331 and AS 08.88.351(3) [8] require that a real estate salesman must turn over earnest money deposits to his broker to be maintained in a trust account until the transaction is closed. It is stipulated that Huff deposited the $6500 in his personal checking account; by his own testimony in the hearing related to the McIntosh-Anderson suit, Huff conceded that the $6500 should have been deposited in a trust account and that it did not belong to him as a commission until the transaction closed.[9] Huff has affirmatively conceded that the funds were not in a trust account and that they did not belong to him. Furthermore, the determination of criminal intent was clearly left to the jury in Instructions 21 and 22, ensuring that the jury fulfilled its principal function.

◼ Whether the $6500 belonged to the Andersons, Steffen, or the McIntoshes at the time of the conversion is not at issue; the issue is whether the $6500 belonged to

the real estate broker who employs him. All money collected on behalf of the broker shall immediately be turned over to the broker or his agent.
AS 08.88.351(3) provides:
*Record of transaction.* A real estate broker shall
   (3) keep a separate trust account in a bank, into which he shall deposit all earnest money deposits and purchase money until it *is proper for him to distribute the money to* the proper persons.

9. Furthermore, the Steffen-Anderson sales contract provides that the deposit shall be maintained by Sourdough Real Estate in a "trustee account until the transaction is completed."

Huff or to "another" as required by the embezzlement statutes.[10] The dispute at trial dealt with whether Huff had a claim of right to the funds as commission at the time of conversion, to demonstrate the absence of fraudulent intent, not whether the funds "belonged to" the buyer or seller.[11] Assuming *arguendo* that the trial court was mistaken in stating that the $6500 was property of the Andersons as buyers, the error was harmless. Huff was prejudiced no more from the instruction as given than if the jury had been instructed that the $6500 belonged to the McIntoshes, Steffen or "another." [12]

Both parties acknowledge that there is a division of authority on whether it is appropriate to rule as a matter of law on an uncontroverted essential element of a crime.[13] However, both lines of cases are distinguishable from the case at bar. None of the cases cited encompasses the situation where the court has taken judicial notice of statutes that decide an essential element of the crime. Nor are their holdings applicable to the subsidiary issue of whether the $6500 belonged to the McIntoshes or the Andersons, since the precise ownership of the funds is not an essential element of the crime charged.

We recognize that the distinction between a formal directed verdict and an informal direction is delicate. The better practice is not to give such an instruction on an essential element of the offense. *See Moore*, 8A Federal Practice, § 30.05 at 30–23 (2d ed. rev. 1978). On these facts, however, we hold that giving instruction No. 23 is not reversible error.

### V

■ Huff appeals from concurrent sentences of three years on the embezzlement charges and five years on the perjury charge. At the time of sentencing, Huff was forty-four years old, living with his wife and two daughters, and a first offender. He was a real estate salesman, businessman and promoter, whose activities were not always successful. In 1972 he had declared Chapter 12 Bankruptcy and had worked diligently since then to pay his creditors.

Huff relies on *Amidon v. State*, 565 P.2d 1248 (Alaska 1977), to support his contentions that the trial court was clearly mistaken in imposing the sanctions it did, and that persons of like background committing like offenses should receive similar sentences. Defendants Amidon and Menard

10. The statutes under which Huff was charged, AS 11.20.280, AS 11.20.290 and AS 11.20.340 all require that the defendant convert money or property belonging to "another." The language of AS 11.20.280 is representative:

*Embezzlement by employee or servant.* An officer, agent, clerk, employee, or servant who embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle or fraudulently convert to his own use, money, property, or thing of another which may be the subject of larceny, and which has come into his possession or is under his care by virtue of his employment is guilty of embezzlement.

11. We find that the only "dispute" of the ownership of the funds took place between the two attorneys and the trial judge during the conference on instructions, outside the presence of the jury. Appellants' counsel was of the opinion that the funds belonged to the McIntoshes; appellee's counsel was unsure, but he thought the funds belonged to the Andersons; the court was confident that the funds belonged to the Andersons, consistent with the indictment.

12. We note that Instruction No. 23 is consistent with the indictment, which alleges in all three embezzlement counts that the $6500 was the property of the Andersons.

13. Appellant cites *United States v. McClain*, 545 F.2d 988 (5th Cir. 1977); *Casella v. United States*, 449 F.2d 277 (3d Cir. 1971); and *United States v. England*, 347 F.2d 425 (7th Cir. 1965), to support the principle that in a criminal prosecution one charged with commission of a crime has an absolute right to a jury determination on all essential elements of the offense.

Appellee relies on *United States v. Tye*, 519 F.2d 586 (10th Cir. 1975); *Lyons v. United States*, 325 F.2d 379 (9th Cir.), *cert. denied*, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1963); *United States v. Salliey*, 360 F.2d 699 (4th Cir. 1966), and *Malone v. United States*, 238 F.2d 851 (6th Cir. 1956), which seem to approve of instructions that assume admitted and uncontroverted facts.

were convicted of embezzlement and both sentenced to serve three years. The presentence report in *Amidon* recommended a suspended sentence for both defendants because it was believed they would not violate the law again. *Id.* at 1263. We vacated the sentences and remanded for further sentencing proceedings, directing that any term of imprisonment imposed should not exceed one year. *Id.*

*Amidon* is distinguishable. There was no conviction for the separate offense of perjury, which is "a very serious breach of the criminal law," as noted by the trial judge in his sentencing remarks. Neither Amidon nor Menard was a licensed fiduciary, in the business of handling other people's money. In the case at bar the presentence report does not portray Huff as an appropriate candidate for probation. Huff is a businessman, whose activities cannot be monitored by probation casework techniques. He poses a clear risk to the public if he is allowed to continue his activities. The sentencing judge particularly stressed the reaffirmation of societal norms, emphasizing that "our economic and social system rests upon the premise that the word of a person can be relied upon . . . and this is especially true with regard to agents who are entrusted with special responsibilities, and acknowledged to have reliability by possessing a license issued by the state. Our system would break down completely if the word of individuals could not be relied upon."

We have reviewed the sentences imposed by the trial judge in light of the entire record of the case, including the presentence report, and find that the sentencing objectives articulated in *State v. Chaney*, 477 P.2d 441 (Alaska 1970) are properly served by the penalty imposed upon Huff for embezzlement. We do find the sentence of five years imprisonment for perjury in this case to be excessive, however. Prior to these convictions, Huff had virtually no criminal record. His perjury was not committed for the purpose of covering up any crimes of violence, nor was it part of a complex scheme involving large-scale organized crime. While perjury is unques-

tionably a serious criminal offense, it is a crime which can be the product of weak character and fear, as it was here, rather than malice and greed. We feel that a prison sentence of three years to serve is sufficient sanction under the facts of this case to properly serve the *Chaney* goals. Therefore we remand the case for resentencing consistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.