**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert DUMAS, Defendant-Appellant.**

**No. 80–1942**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.*
Unit A

Oct. 8, 1981.

Rehearing and Rehearing En Banc Denied Nov. 6, 1981.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

James Folsom, Corpus Christi, Tex., for defendant-appellant.

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Defendant Robert Dumas (Dumas) raises seven issues for this Court's review challenging his conviction by a jury for both possession with intent to distribute methamphetamine and distribution of same. A five year sentence was imposed with a three year special parole term on each count to run concurrently.

In November 1979, a paid informant for the Drug Enforcement Administration (DEA) met Dumas in a bar in Corpus Christi, Texas. On February 12, 1980, this informant telephoned Dumas at his place of employment and inquired about the possibility of purchasing some methamphetamine. The two agreed to meet, and at the subsequent meeting the paid informant agreed to purchase a gram of methamphetamine from Dumas. Later that night, the informant and a Special Agent for the DEA met Dumas at his apartment and paid him $85.00. Dumas left his apartment and returned thirty minutes later with the gram of methamphetamine.

Dumas argued at trial that he was entrapped, and maintained that he only sold the methamphetamine to get rid of the informant and because he felt obligated to the informant who had given him some methamphetamine a few days before. The defense included the testimony of a psychologist who categorized the informant as a "father-figure" who had obligated Dumas by giving him narcotics.

Following our consideration of Dumas' appeal, we affirm his conviction.

### Dismissing A Juror

After the jury had been selected, but before they were sworn, the District Court released a juror and replaced him without notifying the parties. The juror's employer, the U.S. Army, wrote a letter to the District Court requesting that the juror be excused because he was scheduled to be out of town on the day the trial was to commence. The letter recited that the juror was urgently needed to perform a fuel inspection at a U.S. Air Force base in California. On the morning of trial, defense counsel, on learning of this for the first time, objected to the replacement of the juror, moved for a mistrial, and asked that another jury be picked. The District Court replaced the juror with an approved alternate and overruled the objections.

Dumas first complains that the juror was neither unable to perform his duties nor was he disqualified. *See* F.R.Crim.P. 24(c).

He alleges an abuse of discretion by the District Court in excusing the juror for a mere conflict in employment scheduling. More specifically, Dumas doubts the urgency of the juror's job as compared with the urgency of a criminal trial.

In this Circuit, it is within the trial judge's sound discretion to remove a juror and replace him with an alternate whenever that juror's ability to perform his duties becomes impaired. *U. S. v. Dominguez*, 615 F.2d 1093, 1095 (5th Cir. 1980). Absent a showing of bias or prejudice to the defendant, the trial court's exercise of that discretion is not to be disturbed. *U. S. v. Rodriguez*, 573 F.2d 330 (5th Cir. 1978), *vacating* 564 F.2d 1189 (5th Cir. 1977). Factual support or a legally relevant reason must exist for such a dismissal of a juror. *Id.* at 332. In the present case, the District Court was clearly satisfied that the juror who was dismissed was urgently needed by his employer and unable to serve under the terms of Rule 24(c), *supra*. We find no abuse of discretion in that determination. Contrary to Dumas' argument, this finding does not open the flood gates for any juror to elevate employment responsibilities above the duty to serve as a juror. Trial judges must carefully consider the excusal of any juror, and excusals for insubstantial reasons would not be tolerated.

Complaint is also made that the juror was excused without prior notification of and consultation with defense counsel. Relying on F.R.Crim.P. 43(a), which requires that a defendant be present "at every stage of the trial including the empaneling of the jury...," Dumas contends that the dismissal of the above juror was not justified by any immediate necessity or emergency, and he was thus denied the opportunity to test the factual basis as well as the validity of the reason for the dismissal.

This Court in *Dominguez, supra*, stated:

It is clear from the record that it was by inadvertence and not design that defense counsel was not present when the determination of whether the juror should be excused was made. While it is clearly

the better practice to have defense present when such an excusal is granted, the trial judge's misunderstanding about the status of this particular juror does not merit reversal of appellant's conviction in this case.

615 F.2d at 1096. In *Dominguez*, the trial judge mistakenly excused a seated juror under the impression that the juror was not seated. Despite this error, this Court held that the trial judge's determination of inability to serve was not frivolous and therefore was not an abuse of discretion. Because a full explanation of the circumstances surrounding the excusal was given by the trial judge, a record was created for review of the appropriateness of the Court's action and of any prejudice that might have resulted. 615 F.2d at 1096 n. 5.

■ We are in agreement with the Second, Seventh and Tenth Circuits that a deprivation of the right to defendant's presence under Rule 43 is subject to the harmless error rule. *See, e. g., U. S. v. Schor,* 418 F.2d 26, 30 (2d Cir. 1969); *Ware v. U. S.,* 376 F.2d 717, 791 (7th Cir. 1967); *Bacino v. U. S.,* 316 F.2d 11, 14 (10th Cir.), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 63 (1963). We do not feel that the trial judge's determination of the juror's inability to serve, even though that determination was unwisely made outside of the presence of defense counsel, merits the reversal of the conviction. The record reveals that Dumas' objection at trial to the excusal was not based on the denial of notice or presence at the conference. Consequently, the District Court did not give reasons for the non-notification or for the failure to have the defendant present at the conference. Even if this issue is properly before this Court, the record indicates that it was by inadvertence, not design, that Dumas was not notified or present at the conference when the excusal was granted, and the error was harmless beyond a reasonable doubt.

## Limits On Cross-Examination

There is nothing to the claim that the Court unduly limited cross-examination of the informant by sustaining the prosecutor's objection to a repetitive question. Indeed, the record shows that defense counsel, in spite of the sustained objection, was able to ask the same question of the informant on another occasion during cross-examination. The question was actually asked on four occasions, and answered negatively without objection by the Government twice.

## Proof Of An Extraneous Offense

■ During cross-examination of the Government's informant, defense counsel asked the informant about a telephone conversation with Dumas. The informant replied that Dumas said, "[My attorney] is my God right now and he told me not to sell any more dope until after a prior case had been settled in court." During direct examination of Dumas, he testified that the statements made to the informant were merely fictitious and an attempt to stop the informant from bothering him. On cross-examination, Government counsel asked if it was also fictitious that' Dumas had charges pending against him, and Dumas replied that the entire story was fictitious. Defense counsel immediately objected to the question regarding an offense, and added that the prosecutor had "previously stated that he would not go into such things on cross-examination or otherwise and we don't believe that we have opened the door on anything." After hearing argument the District Court found that when defense counsel elicited the testimony concerning the pending charge against Dumas,[1] the door was opened to this line of testimony. *See U. S. v. Walker,* 613 F.2d 1349, 1352–53, 1353 n. 5 (5th Cir.), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800 (1980). We find that the Government's questions were clearly permissible to impeach Dumas.

---

1. On direct examination of Dumas, when asked about a conversation with the informant, Dumas replied that "I made up a fictitious story that—I said my lawyer had been down at the building and that they had been following me all night... and I couldn't afford to do anything that would get me in trouble and I just made up the story so he wouldn't harass or bother me anymore."

### An Improper Question?

Following the line of testimony regarding charges pending against Dumas, the prosecutor asked, "Do you know that your father and [an attorney] came to my office yesterday and tried to get me to dismiss these charges against you?". Defense counsel objected to the question as irrelevant and immaterial, and requested that a mistrial be granted because this "is something that cannot be washed from the minds of the jury." The District Court denied the motion for mistrial and instructed the jury to disregard the "testimony of the United States Attorney that has been made in open court." Dumas now argues that the prosecutor's expression of personal opinion, because of his status and role as a spokesman for the Government, tended to tip the scales of justice in favor of the Government.

This was not an expression of opinion, but a direct question about the fact known to the prosecutor. Whether it should have been asked we need not decide, since the Judge's instructions were immediate and adequate.

### The Prosecution's Final Argument

We find no error, and certainly no plain or harmful error, in the prosecutor's final argument to which no objection was made. It was a permissible response to the defense's argument. *U. S. v. Cotton*, 631 F.2d 63, 66 (5th Cir. 1980), *cert. denied*, 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 227 (1981), allows the Government to rebut defense counsel's arguments in strong terms where necessary to challenge an equally strong argument. Moreover, this Court must consider possible prosecutorial misconduct in light of the entire trial. *See Cobb v. Wainwright*, 609 F.2d 754, 755 (5th Cir. 1980), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980). The error here, if any, was harmless in light of the entire record.

### Jury Instructions On Entrapment

The entire defense was entrapment by the Government informant. Dumas contends that the District Court's instruction on entrapment was vague and confusing. Specifically, Dumas argues that the use of the words "law enforcement officers or their agents" was not sufficiently precise so as to clear up any confusion that the jurors may have had as to whether the District Court meant Government Agents or agents of Government Agents. Dumas made no request at trial for a more precise instruction on agency. The instruction that defense counsel proposed simply defined entrapment as being "induced or persuaded by law enforcement officers or their agents to commit the crime charged in the indictment," thus his requested charge was almost identical in this respect to the District Court's.

We find no error in the entrapment instruction given to the jury in this case. The informant was often referred to as an agent during trial, and Dumas' defense was partially based on the fact that the informant was a paid Government employee.[2]

### Maximum Sentence Imposed

There is no error in the imposition of the maximum five year sentence which was within the statutorily permissible limits of 21 U.S.C. § 841(a)(1). No objection was made to the pre-sentence report, and the District Court was permitted to consider evidence of crimes for which Dumas had been indicted but not convicted. *U. S. v. Benton*, 637 F.2d 1052, 1060 (5th Cir. 1981). We find no abuse of discretion here.

AFFIRMED.

---

2. The present facts are clearly distinguishable from those in *U. S. v. Anderton*, 629 F.2d 1044 (5th Cir. 1980), where the "agent" who allegedly entrapped was simply an unpaid, "ignorant pawn" of the Government.