543 P.2d 1171

**STATE of Idaho, Plaintiff-Appellant,**

v.

**William Delos CAMPBELL, Defendant-Respondent.**

**No. 11838.**

Supreme Court of Idaho.

Dec. 22, 1975.

Wayne L. Kidwell, Atty. Gen., Gordon S. Nielson, Sr., James W. Blaine, Lynn E. Thomas, Deputy Attys. Gen., Boise, for plaintiff-appellant.

Phillip M. Becker, Becker, Swenson & Shaw, Gooding, for defendant-respondent.

BAKES, Justice.

On August 24, 1974, the defendant respondent William Delos Campbell, doing business as Campbell's Construction, issued to one Bill Conner, an employee, a check in the amount of $82.01 as payment for wages earned the previous week. Conner

cashed the check at Cook's Market in Jerome, but the bank subsequently returned the check unpaid to Cook's Market because there were insufficient funds in Campbell's account. Cook filed a complaint against Campbell alleging a violation of I.C. § 18–3106(b),[1] issuing a check upon insufficient funds in an amount over $25.00. By a second amended information the defendant Campbell was charged with uttering a check in the amount of $82.01 to Bill Conner, an employee of Campbell's Construction Co., ". . . as payment for past due wages, . . ." with intent to defraud Bill Conner.

The district court granted the defendant's motion to dismiss the second amended information on the ground that the state had alleged on the face of the information that the check was for payment of a pre-existing indebtedness and thus it would be impossible to convict the defendant of a crime under I.C. § 18–3106(b) because the requisite "intent to defraud" was rebutted by the fact that the check was issued for a pre-existing indebtedness. The state has appealed from the order granting defendant's motion to dismiss the information. I.C. § 19–2804(1).

The issue raised by the defendant's motion to dismiss the information has been raised in several other jurisdictions with varying results. See Annot.: Construction and effect of "bad check" statute with respect to check in payment of pre-existing debt, 59 ALR2d 1159 (1958); State v. Blasi, 64 N.J. 51, 312 A.2d 135 (1973), concurring and dissenting opinion, footnote 1, at 137. The argument in support of the trial court's action is that when the defendant issued the worthless check to his creditor the creditor's position was unchanged and

the pre-existing obligation remained, and thus the defendant obtained nothing of value. Further, since the defendant could not defraud the creditor under these facts, the defendant could not have an intent to commit fraud. This argument has had significantly more success in jurisdictions which require that something of value be obtained by means of a worthless check, e.g., Hoyt v. Hoffman, 82 Nev. 270, 416 P.2d 232 (1966); West Virginia v. Stout, 142 W.Va. 182, 95 S.E.2d 639 (1956); State v. Davis, 26 N.M. 523, 194 P. 882 (1921). The Idaho statute, however, does not require that something of value be obtained by means of the worthless check.

Initially it should be observed that the defendant was not prosecuted under I.C. § 18–3101, obtaining money, property or labor under false pretenses. That statute, which is a codification of the false pretenses crime at common law, is distinguishable from I.C. § 18–3106, because that crime requires that the victim actually be defrauded of something of value. State v. Whitney, 43 Idaho 745, 254 P. 525 (1927). The essence of the crime under I.C. § 18–3106, however, is in the wilful making, drawing, uttering or delivery of a check drawn on a non-existent account or an account which is insufficient to pay the amount, with an intent to defraud. In State v. Campbell, 70 Idaho 408, 219 P.2d 956 (1950), this Court held that it is not "necessary that the check be accepted by the person to whom it is tendered and such person part with something of value. The statute in question is not concerned with the offense of obtaining money or property by false pretense. . . . The completion of the crime under [I.C. § 18–3106] does not depend upon the success of the

---

1. I.C. § 18–3106(b) reads in relevant part: "(b) Any person who . . . wilfully, with intent to defraud shall make, draw, utter or deliver, . . . any check, draft or order for the payment of money in the sum of $25.00 or more, upon any bank . . . knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has some but not sufficient funds in or credit with such bank . . . for the full payment of such check, draft or order upon its presentation, although no express representative is made with reference thereto, shall upon conviction be punished by imprisonment in the state prison for a term not to exceed three (3) years, or by a fine not to exceed $5,000, or by both such fine and imprisonment."

enterprise." 70 Idaho at 414–415, 219 P.2d at 960. If the defendant has committed acts sufficient to constitute a crime under I.C. § 18–3106 and was successful in defrauding his victim, the state may choose to prosecute under the provisions of § 18–3101. *State v. Roderick,* 85 Idaho 80, 375 P.2d 1005 (1962).

■ In enacting I.C. § 18–3106, the legislature provided a rebuttable presumption that the maker of an insufficient funds check has the requisite intent to defraud. Subsection (d) of the statute provides in relevant part:

"(d) As against the maker or drawer thereof, the making, drawing, uttering or delivering of such 'check, draft or order as aforesaid shall be prima facie evidence of intent to defraud and of knowledge of no funds or insufficient funds . . . ."

Ordinarily, the prosecution can rely on this presumption in establishing a *prima facie* case, while the defendant can then introduce rebuttal evidence of lack of knowledge or intent to defraud. The presumption has the effect of preventing a court from ruling as a matter of law that the defendant did not have the requisite knowledge or intent, thus preserving the issue for the jury. *Cf. State v. Sedam,* 62 Idaho 26, 107 P.2d 1065 (1940).

However, here the prosecuting attorney, in the second amended information, specifically pled that the check was given ". . . as payment for past due wages . . . ." Having thus pled what would ordinarily be a defensive matter, we must answer the following two questions. First, can a criminal prosecution be brought under I.C. § 18–3106(b) when the insufficient funds check was issued in payment of a pre-existing debt; and secondly, what is the effect of such a showing on the presumptions raised by subsection (d) of the statute?

As previously noted, one who issues a bad check in payment of a pre-existing debt ordinarily does not improve his financial position *vis-a-vis* his creditor, nor does the victim ordinarily suffer any financial damage by accepting it. Under such circumstances, it is improbable that the creditor is defrauded or that his debtor had an intent to defraud. Nevertheless, under the facts of this case, it is conceivable that had the defendant Campbell not paid his employee on that date the employee would not have returned to work the following work day. Thus, the defendant may have issued the check to keep his employee working, knowing that eventually when the check was later returned the employee would probably quit. Other situations may be hypothesized. A creditor may be persuaded to forego bringing suit or taking other action to collect a debt in reliance upon the receipt of the check. Thus, issuing a check for a pre-existing debt could be shown to be part of a scheme in which an intent to defraud is evident. In the instant case an investigation of the reason that the defendant issued the check in question, therefore, could disclose the requisite intent to defraud.

■ We hold that the fact that the check was issued in payment of a pre-existing obligation does not preclude criminal prosecution under I.C. § 18–3106. *Accord: State v. Bradley,* 190 Wash. 538, 69 P.2d 819 (1937); *State v. Meeks,* 30 Ariz. 436, 247 P. 1099 (1926); *State v. Lowenstein,* 109 Ohio St. 393, 142 N.E. 897 (1924). The second amended information charges that the check was issued with intent to defraud Bill Conner, and the state is entitled to have the chance to prove that.

■ A more difficult question is raised in considering the effect that the prosecution's pleading that the check was in payment of a pre-existing obligation has on the presumptions raised in subsection (d) of the statute. The language of that section applies to any situation in which the defendant knowingly issues an insufficient funds or a no funds check. The legislature did not distinguish between checks issued for past indebtedness or for present indebtedness. We are of the opinion, how-

ever, that the presumption of intent to defraud cannot constitutionally be applied in that narrow class of cases where it is shown that the insufficient funds check was given in payment of a pre-existing obligation. We reach this conclusion in light of the prior decisions of this Court, and the decisions of the United States Supreme Court which have limited and defined the role of statutory presumptions in criminal prosecutions under the due process clause of the United States Constitution.

The prevailing test as propounded by the United States Supreme Court is that "a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, [that is] if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." *Tot v. United States*, 319 U.S. 463, 467–468, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943). This formulation of the constitutional test by the United States Supreme Court was anticipated by the Supreme Court of Idaho in *State v. Grimmett*, 33 Idaho 203, 193 P. 380 (1920) when it held that

> "[W]here . . . there is no connection or rational relationship between the fact proved and the ultimate fact to be presumed, such a statute shifts the burden of proof, and in a criminal case deprives the defendant of the protection of his constitutional guaranties." 33 Idaho at 209, 193 P. at 381.

In the unrelated appeal of *State v. Campbell*, 70 Idaho 408, 219 P.2d 956 (1950), the presumption imposed in I.C. § 18–3106(d) was challenged on constitutional grounds. This Court restated the "rational connection" test, citing *Grimmett*, and held that in that case, which did not involve giving a check for an antecedent debt, the presumption satisfied the requirements of the rule and did not deprive the criminal defendant of due process of law.[2] Thus, this Court in *State v. Campbell, supra*, approved a legislative determination that in most situations the probabilities are extremely high that one who makes, draws, utters or delivers an insufficient funds or no funds check as set forth in sections (a) and (b) of the statute has knowledge of this circumstance and has an intent to defraud, and further that a jury, having been shown that the defendant did make, draw, utter or deliver such check (proved fact), could infer that the defendant had such knowledge and also had an intent to defraud (presumed fact).

However, as we have stated in the first part of this opinion, when an insufficient funds check is given in payment of a pre-existing obligation it is not likely that the maker had an intent to defraud, although it is legally possible that he did have such intent. Therefore, we hold that to the extent that I.C. § 18–3106(d) presumes an intent to defraud from the giving of an insufficient fund check in payment of a pre-existing obligation that presumption is not

2. It is presently unclear whether the "rational connection" test of *Tot* is stringent enough to satisfy the requirement that in criminal cases the prosecution must prove the defendant guilty beyond a reasonable doubt. See *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In cases subsequent to *Tot* the court has required that it be shown that "the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The most recent decision on the issue is *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), in which the court held that the presumption involved there did satisfy a reasonable doubt standard but did not hold that such a standard is constitutionally required in all cases. Since the narrow issue before this Court concerns only whether the presumption may constitutionally be applied on these facts, and we conclude that there is no rational connection between the fact proved and the fact presumed in this case and thus the presumption may not be so applied, we need not determine whether a more stringent test is required (because failing the rational connection test it would obviously also fail any more stringent test). The validity of the presumption in I.C. § 18–3106(d) in light of the more recent United States Supreme Court decisions in the area is not before this Court.

based upon common experience, there being an insufficient relationship "between the fact proved and the ultimate fact to be presumed." *State v. Grimmett, supra.* We cannot say that "the presumed fact is more likely than not to flow from the proved fact," *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and therefore the presumption under the circumstances of this case is arbitrary, irrational and therefore unconstitutional. As stated in *Tot v. United States, supra:*

> "[W]here the inference is so strained as not to have a reasonable relation to the ·circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts." 319 U.S. 468, 63 S.Ct. 1245.

In conclusion, we hold that in prosecutions under I.C. § 18–3106 in which it is alleged that the check in question was given in payment of a pre-existing obligation the state may not rely on the presumption that the maker had an intent to defraud raised in subparagraph (d) of the statute. The state must present evidence which proves beyond a reasonable doubt that the defendant had the requisite intent to defraud. If the state fails to present such proof, the defendant would be entitled to a judgment of acquittal.

Order of dismissal, *reversed.*

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.