Amel McCARLO, Appellant,

v.

STATE of Alaska, Appellee.

No. 7112.

Court of Appeals of Alaska.

Feb. 10, 1984.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Richard W. Maki, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Amel McCarlo appeals, following conviction for rape and attempted sexual assault in the first degree. Former AS 11.15.-120(1), AS 11.41.410(a)(1), and AS 11.31.100. McCarlo contends that the trial court erred in determining that he was competent to stand trial. McCarlo further alleges that he involuntarily waived his right to jury trial. Finally, McCarlo argues that his sentence, a total of twenty years with ten years suspended, was excessive. We affirm.

## FACTS

On October 15, 1979, McCarlo entered the home of J.B., without permission, and proceeded to an upstairs bedroom. There, McCarlo found and raped J.B. After the incident, McCarlo called the Alaska State Troopers and reported his offense. He was later charged by indictment with one count of rape and one count of burglary in a dwelling.

On January 15, 1980, McCarlo attempted to change his plea from not guilty to guilty. Superior Court Judge Milton M. Souter refused to accept McCarlo's plea based on his conclusion that McCarlo did not sufficiently understand the rights that he would relinquish by entering a guilty plea. After another hearing at which McCarlo again unsuccessfully attempted to enter a guilty plea, Judge Souter ordered a hearing to determine McCarlo's competency to stand trial. A competency hearing was held on July 7, 1980; extensive psychiatric testimony was presented by both the defense and the state. The witnesses at the hearing generally agreed that McCarlo suffered from mild mental retardation and that his retardation impaired his memory and his ability to think in abstract terms. However, the witnesses disagreed as to the extent of McCarlo's impairment, and they differed on the question of McCarlo's competency to stand trial. Judge Souter ultimately concluded that McCarlo was competent to stand trial.

McCarlo again attempted to enter a guilty plea to the rape charge on October 28, 1980. Judge Souter concluded, as he had before, that McCarlo did not have a sufficient understanding of the rights he would give up by entering a guilty plea. Accordingly, Judge Souter rejected McCarlo's guilty plea, and, after an unsuccessful petition for review to this court, McCarlo's case was scheduled for trial. Pending trial, McCarlo was released to The Lodge, an establishment providing structured, supervised housing for mentally retarded persons.

On February 12, 1981, while awaiting trial for the rape charge, McCarlo attacked J.C. After a struggle, J.C. was able to escape from McCarlo and fled to safety. McCarlo was apprehended and, upon being interviewed by police, indicated that he intended to rape J.C. This incident led to a second indictment, which charged McCarlo with attempted sexual assault in the first degree.

On July 10, 1981, Superior Court Judge J. Justin Ripley conducted a competency hearing with respect to McCarlo's attempted sexual assault charge. After hearing extensive psychiatric testimony, Judge Ripley ruled that McCarlo's mental condition rendered him incompetent to stand trial. The psychiatric evidence was similar to that previously heard by Judge Souter. Relying on Judge Ripley's findings, Superior Court Judge Victor D. Carlson made a similar ruling with respect to McCarlo's original charge of rape. Judge Carlson ordered McCarlo to be committed to the Alaska Psychiatric Institute for the duration of his incompetency.

More than six months later, on March 9, 1982, both of McCarlo's cases were consolidated before Judge Carlson and yet another competency hearing was held. Testimony previously aduced concerning McCarlo's competency was submitted for Judge Carlson's consideration. In addition, psychiatric and psychological testimony was presented concerning McCarlo's progress at API. The testimony indicated that members of the API staff had worked with McCarlo to improve his understanding of the judicial system and the criminal proceedings that he faced; McCarlo had managed to make some progress through this training. After considering previously submitted evidence and the new testimony, Judge Carlson declared McCarlo to be competent to stand trial and entered detailed findings in support of this conclusion. McCarlo's trial was scheduled for early July, 1982.

Immediately prior to trial, McCarlo waived his right to a jury trial. After hearing evidence at trial, Judge Carlson found McCarlo guilty of both rape and attempted sexual assault in the first de-

gree. Judge Carlson subsequently sentenced McCarlo to serve fifteen years in prison with five years suspended for rape. He imposed a consecutive, five-year sentence for attempted sexual assault; all five years of the sentence were suspended. The aggregate sentence imposed by Judge Carlson was thus twenty years with ten years suspended.

## COMPETENCY TO STAND TRIAL

McCarlo argues that Judge Carlson erred in finding that he was legally competent to stand trial. The issue of competency was governed by former AS 12.45.100(a), which provided:

No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.[1]

■■■ It is well established that, in dealing with an appeal from a determination of competency to stand trial, the proper standard of review is whether the trial court's determination of competency is supported by substantial evidence. *Dolchok v. State*, 639 P.2d 277, 294 (Alaska 1982); *McKinney v. State*, 566 P.2d 653, 659 (Alaska 1977), *modified on other grounds*, 570 P.2d 733 (Alaska 1977). Decisions on questions of competency are generally left to the sound discretion of the trial court. *McKinney v. State*, 566 P.2d at 659; *Schade v. State*, 512 P.2d 907, 914 (Alaska 1973).

McCarlo recognizes these holdings. However, he urges this court to depart from them by adopting a standard that would allocate to the state the burden of proving competency beyond a reasonable doubt. We decline to do so. McCarlo has cited no cases to support his claim that proof beyond a reasonable doubt should be required on the issue of competency. The standard of proof beyond a reasonable doubt is normally applied only to the essential elements of an offense or to defenses

integrally related to the existence of essential elements. *United States v. DiGilio*, 538 F.2d 972, 988 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Makris*, 535 F.2d 899, 906 (5th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).

Moreover, AS 12.45.100, which deals with the competency requirement, makes no mention of proof beyond a reasonable doubt. Application of such a standard would appear to be incompatible with the provisions of the statute. The equivalent federal provision, 18 U.S.C. § 4244, has uniformly been interpreted to require that competency be demonstrated by a preponderance of the evidence. *United States v. DiGilio*, 538 F.2d at 988; *United States v. Makris*, 535 F.2d at 906; *United States v. Zovluck*, 425 F.Supp. 719, 721 (S.D.N.Y. 1977). There appears to be sound reason for this approach:

A finding of incompetency places the accused in a purgatory between innocence and guilt. Despite our jurisprudential principle that a person is innocent until proven guilty, the defendant remains under a cloud of suspicion. The accused who is found incompetent to stand trial is involuntarily committed to the state mental hospital; his personal freedom is restrained until such time as he becomes competent to stand trial.

. . . .

. . . A decision not to proceed with a trial holds out no hope of future capacity, but only denies, permanently, the constitutional right to a fair and speedy trial.

Hayes and Ehrlich, *The Ability of the Mentally Retarded to Plead Guilty*, 1975 Ariz. St.L.J. 661, 668–70.

Furthermore, the requirement of proof beyond a reasonable doubt seems inconsistent with our supreme court's characterization of the competency standard. In *Schade v. State*, 512 P.2d 907 (Alaska

---

**1.** AS 12.45.100(a) was subsequently revised to eliminate references to gender and has been renumbered AS 12.47.100. The substance of the provision remains unchanged.

1973), the court described the level of competency required to stand trial as follows:

> The defendant must have some *minimum ability* to provide his counsel with information necessary or relevant to his defense. He must also be able to understand the nature of the proceedings sufficiently to participate in certain decisions about the conduct of the defense. Some strategic choices must be the product of meaningful communication between the defendant and his counsel.
>
> But this does not mean that a defendant must possess any high degree of legal sophistication or intellectual prowess. In determining competency, *the standard of judgment must be a relative one. Some comparison must be made between the apparent competency of the accused and the ability level of the average criminal defendant. That level of ability is often not great.* Numerous persons are subjected to criminal prosecution, and properly so, even though they are of relatively low intelligence or are suffering from some significant emotional or physical impairment. Not every emotional flaw renders one incompetent to stand trial.

*Id.* at 914 (footnote omitted; emphasis added).

Finally, while the supreme court has not specifically considered adopting the standard of proof beyond a reasonable doubt, it is manifest that the court has not considered this standard to be applicable. *See Dolchok v. State,* 639 P.2d at 294 (affirming a finding of competency where there was conflicting testimony but substantial evidence supported the trial court's conclusion). Indeed, the "substantial evidence" standard of appellate review adhered to by the supreme court is not well-suited for application of the reasonable doubt standard.[2]

■ We hold that under former AS 12.-45.100(a) and its current counterpart, AS 12.47.100(a), competency to stand trial need be demonstrated only by a preponderance of the evidence.

■ McCarlo alternatively contends that there was insufficient proof to support Judge Carlson's finding of competency, even if the preponderance of the evidence standard is applied. Upon review of the record, we believe substantial evidence was presented to support the proposition that McCarlo was competent to stand trial. We therefore hold that Judge Carlson did not abuse his discretion in deciding that McCarlo was not incompetent.

## WAIVER OF JURY TRIAL

■ McCarlo next contends that his waiver of jury trial was not voluntary.[3] Before accepting the waiver of jury trial in this case, Judge Carlson personally ad-

---

**2.** Rejection of a standard as narrow as proof beyond a reasonable doubt may also fairly be inferred from our supreme court's refusal to adopt stringent standards of competency for specialized application. Thus, in *Morgan v. State,* 582 P.2d 1017, 1021 n. 11 (Alaska 1978), the court indicated disapproval of *Sieling v. Eyman,* 478 F.2d 211 (9th Cir.1973). In *Sieling,* the court had adopted a strict standard of competency for application in cases where the defendant sought to waive his right to trial by entering a plea of guilty. *See also Dolchok v. State,* 639 P.2d at 292–94 (rejecting *Sieling v. Eyman* where the defendant claimed that he had been incompetent to waive his right to jury trial).

**3.** McCarlo's competency to waive jury trial is implicit in the trial court's determination of his competency to stand trial. *Dolchok v. State,* 639 P.2d at 293. McCarlo also seems to assert that

his apparent confusion prior to trial, coupled with the possibility that his mental condition had changed between the time of the competency hearing (March 9, 1982) and the trial (July 6, 1982), required an additional hearing to determine competency. McCarlo cites former AS 12.45.100(b), which required the court to order a psychiatric evaluation if reasonable cause existed to believe that McCarlo might be incompetent. We do not believe the record supports the conclusion that Judge Carlson was required to hold yet another competency hearing. Of particular significance to our decision is the fact that McCarlo's trial counsel acquiesced in the waiver of jury trial and affirmatively indicated his belief that it was appropriate to proceed with a non-jury trial. The trial court was entitled to place great weight on the evaluation of McCarlo's condition made by his own attorney. *See Fajeriak v. State,* 520 P.2d 795, 802–03 (Alaska 1974).

dressed McCarlo, who indicated repeatedly that he did not want a jury. Judge Carlson also inquired of McCarlo's trial counsel. McCarlo's counsel expressly acquiesced to the waiver of jury trial.

■ McCarlo nevertheless maintains that the colloquy that occurred between Judge Carlson and McCarlo reflects substantial confusion on McCarlo's part concerning the jury trial waiver. Thus, McCarlo argues that the record is inadequate to support the conclusion that his waiver of jury trial was knowingly and intelligently made. *See Walker v. State*, 578 P.2d 1388 (Alaska 1978). *See also Gregory v. State*, 550 P.2d 374 (Alaska 1976).

Review of the dialogue between Judge Carlson and McCarlo at the time of McCarlo's waiver of jury trial does, indeed, indicate substantial confusion on McCarlo's part concerning the specific nature of the proceedings he was involved in, as well as considerable uncertainty about the precise role of a jury. We agree that McCarlo's remarks, standing alone, do not affirmatively demonstrate that his waiver of a jury trial was knowing and intelligent. We conclude, however, that a narrow focus on McCarlo's remarks is inappropriate. Instead, we must consider the totality of the record.

Despite McCarlo's apparent confusion concerning the precise nature of the proceedings and the function of a jury, it is clear from the record that he was adamant in his belief that he did not desire a jury trial. McCarlo's trial counsel specifically noted that McCarlo seemed to be experiencing difficulty, at that time, in understanding the role a jury would play in his case. Nevertheless, his counsel stated that McCarlo had consistently indicated that he did not want to be tried before a jury. McCarlo's counsel further stated that he was confident his client had previously understood the role that a jury would play in his case and, at that time, expressed a strong desire to waive jury trial. In response to questioning by Judge Carlson, McCarlo's counsel stated he was satisfied that McCarlo should proceed with a court trial.[4]

The statements made by McCarlo's counsel are directly supported by the transcript of an exchange between Judge Carlson and McCarlo, which occurred during the competency hearing in March 1982, three months prior to trial. At the time, McCarlo stated repeatedly and emphatically that he did not want a jury trial and would be satisfied with a trial before Judge Carlson. Judge Carlson specifically informed McCarlo that his counsel would further discuss the mat-

**4.** Statements made by McCarlo's counsel were, in relevant part, as follows:

THE COURT: And, Mr. McGee, does that [McCarlo's waiver of jury trial] also apply to case No. 81–741?

MR. McGEE: Yes, Your Honor. In my discussions with Mr. McCarlo over the issue of whether to have a judge or a jury trial, he has—he has been solid on that point, that he does not want a jury—a jury trial. I think that that is partially out of embarrassment. He doesn't want people to—to hear what happened. And he also in his relationship with the court—he has also thought of—he's always expressed some confidence—some confidence in—in a judge deciding what happens to him. He thinks that that is what—that that is what happens. And although he is confused over the precise order in which these proceedings must follow, he does believe the judges make those determinations. He at one time I believe understood what the function of a jury was. He—this morning he thought that jur-

ors were people who stand around. But I think in March he—he certainly had an understanding of—that a jury listens to all the facts and then decides whether or not he committed the crime. Whether that translates into the—the same judge's func—whether the judge's function is the same in his mind I'm not completely clear on. At least certainly not this morning. His position with respect to whether or not he wanted a trial at all has shifted from Friday when he decided that he should plead guilty, and to this morning when he wanted to plead not guilty. He does have some idea that—a shifting notion of—of that determining what the eventual sentence is. He thinks that that affects what happens to him afterwards. Rather than affecting the actual adjudication of the events with which he's charged.

THE COURT: Do you feel based—in light of what you've said do you feel comfortable with proceeding with a court trial?

MR. McGEE: I do.

**1274**

ter with him. In his written findings concluding that McCarlo was competent to stand trial, Judge Carlson expressly referred to McCarlo's desire to waive his right, stating, in relevant part: "[McCarlo] knows what a trial is and wants the judge to make the determination of what should happen to him because a jury would make him nervous; . . . ." Significantly, at all times, McCarlo's reasons for wanting to waive a jury trial appear to have remained consistent: he trusted Judge Carlson and did not want to suffer the anxiety and embarrassment of having his case heard by jurors.

Considering the totality of the record, we conclude that Judge Carlson did not err in finding that McCarlo's waiver of jury trial was voluntarily made. We hold that Judge Carlson did not commit error in conducting McCarlo's trial without a jury.

### SENTENCE

McCarlo's last argument is that his sentence is excessive. McCarlo had no convictions prior to these offenses. Judge Carlson nevertheless found McCarlo to be one of the worst offenders within his class. This finding was based on information that McCarlo had a long-standing history of inappropriate, sexually aggressive conduct. This conduct had been exacerbated in recent years by an alcohol abuse problem. Judge Carlson's determination was also based on McCarlo's commission of two separate offenses, as well as on the seriousness of the offenses. The judge noted that in each case the victims, though not badly injured, were seriously traumatized.

In imposing the sentence, Judge Carlson considered the need to rehabilitate McCarlo, the need to deter commission of similar offenses, and the need to reaffirm societal norms. Given McCarlo's history of aggressive behavior and the seriousness of the present cases, however, Judge Carlson expressed the belief that emphasis should be given to the reaffirmation of societal norms and the protection of the public in imposing McCarlo's sentence. Accordingly, Judge Carlson sentenced McCarlo to fifteen

years' imprisonment for rape, with five years suspended. He imposed a consecutive five-year sentence for attempted sexual assault; all five years of this sentence were suspended.

Because McCarlo was a first offender, we think that his sentence of fifteen years with five years suspended for the crime of rape might be excessive if it were the only offense involved in this case. However, McCarlo was sentenced for two separate offenses, which involved two separate victims and were committed at different times. We must therefore review the appropriateness of the total sentence McCarlo received for his crimes. *Waters v. State*, 483 P.2d 199, 202 (Alaska 1971).

■ We agree with Judge Carlson's assessment of the seriousness of McCarlo's crimes. Both offenses involved violent sexual assaults. McCarlo's rape was committed in the bedroom of his victim's house, which McCarlo had entered without authority. It appears that McCarlo's second victim was able to escape rape only after fending off a physical attack and fortuitously managing to reach shelter before McCarlo could catch her. Moreover, the second offense was committed when McCarlo was awaiting trial for rape and living in a structured, supervised setting. We further agree that the evidence reflecting McCarlo's history of sexually aggressive conduct was highly relevant.

■ Considering the totality of the sentencing record, we are unable to conclude that Judge Carlson was clearly mistaken in imposing an aggregate sentence of twenty years with ten years suspended for McCarlo's offenses. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.