697 P.2d 1210

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Mary Jean HEBNER, Defendant-Appellant.**

**No. 14507.**

Court of Appeals of Idaho.

March 25, 1985.

Timothy D. Wilson, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Mary Hebner was convicted, after a jury trial, of drawing an insufficient funds check in excess of $50.00. I.C. § 18-3106(b). On appeal she raises two issues. She contends that an instruction given by the court to the jury impermissibly shifted the burden of proof—concerning fraudulent intent—from the state to her as the defendant. Also, she contends there was not a sufficient foundation laid to introduce into evidence other checks drawn against her account, in addition to the one for which she was on trial. Although we find no error on the evidentiary issue, we agree that the jury was improperly instructed. We therefore reverse the conviction and remand for a new trial.

I

Under I.C. § 18-3106(b) it is a felony to draw a check in the sum of $50 or more against an account which has insufficient funds or credit to cover full payment of the check, where the drawer knows the account is insufficient and the check is drawn with an intent to defraud. Here, the prosecutor presented evidence that Mary Hebner had written and cashed an insufficient funds check for $100 at a local grocery store, purchasing merchandise and receiving the cash difference between her purchase and the amount of the check.

The trial judge gave the following instructions to the jury:

"Any person who for himself willfully, with intent to defraud shall make, draw, utter or deliver any check for the payment of money in the sum of $50 or more, upon any bank or depository, knowing at the time of such making, drawing, uttering or delivery that the

maker or drawer has some, but not sufficient funds in or credit with such bank or depository for full payment of such check, draft or order upon its presentation, although no express representative [1] is made with reference thereto—" shall be guilty of a felony.

You are further instructed that Section 18-3106(d) of the Idaho Code provides, in part, as follows:

"As against the maker or drawer thereof, the making, drawing, uttering or delivering of such check, draft or order as foresaid shall be prima facia [sic] evidence of intent to defraud and of knowledge of no funds or insufficient funds, as the case may be, in or credit with such bank or depository for the payment in full of such check, upon its presentation. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository upon whom such check is drawn for the payment of such check.

Prima facia [sic] evidence means sufficient evidence, unless outweighed by other evidence in the case. In other words, the making, drawing, uttering or delivering of a check with insufficient funds to cover it, if proved, is sufficient to show an intent to defraud, in the absence of evidence in the case which leads the jury to a different or contrary conclusion."

While the prosecuting attorney was making his closing argument, Hebner's attorney objected to a statement by the prosecutor to the effect that writing a check on an overdrawn account, without a credit arrangement, constitutes intent to defraud. Thereafter, the court recessed the proceeding to prepare a clarifying instruction regarding I.C. § 18-3106(d), which was read to the jury before the state's attorney continued. The clarifying instruction stated:

Under the statute prima facia [sic] evidence means evidence, sufficient evi-

---

**1.** The word "representative," found in the Idaho Code section 18-3106(d) from which this part of the instruction was taken, is a typographical error by the compiler of the code. The statute, as enacted by the legislature, uses the word "representation," not "representative." *See* 1972 Session Laws, ch. 336, § 1, p. 844 at 905.

dence, unless outweighed by other evidence in the case. In other words, the making, drawing, uttering or delivering of a check with insufficient funds to cover it, if proved, is sufficient to show an intent to defraud, and an absence of evidence in the case which leads the jury to a different or contrary conclusion. You are instructed that specific intent to defraud cannot be presumed alone from the probable consequences of an act. You may, however, consider the possible consequences of an act in determining whether or not a person specifically intended such consequences and whether there was a specific intent to defraud.

■ Hebner contends the judge's instructions regarding criminal intent may have caused the jurors to believe Hebner had a burden to prove she lacked an intent to defraud when she issued the insufficient funds check. Our Supreme Court has held that "[i]n enacting I.C. § 18–3106, the legislature provided a rebuttable presumption that the maker of an insufficient funds check has the requisite intent to defraud." *State v. Campbell*, 97 Idaho 331, 333, 543 P.2d 1171, 1173 (1975). The Supreme Court declined to rule on the validity of that presumption. *Campbell*, n. 2, 97 Idaho at 334, 543 P.2d at 1174. It is now clearly established that shifting the burden of proof to the defendant on an element of the crime charged violates the fourteenth amendment due process requirements. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Review of this issue requires a brief discussion of *Sandstrom* as well as certain post-*Sandstrom* cases factually similar to the case at bar.

Sandstrom was convicted of "deliberate homicide," Montana Code Annot. § 45–5–102 (1978), a criminal offense that required the state to prove the accused purposely or knowingly caused the death of the victim. Sandstrom objected to the use of a jury instruction which stated: "the law presumes that a person intends the ordinary consequences of his voluntary act." Sandstrom argued that the instruction, by creating a mandatory presumption, had the effect of shifting the burden of proof on the intent issue to the defendant. The Supreme Court stated that determining the nature of the presumption created by the instruction "requires careful attention to the words actually spoken to the jury (citation omitted), for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." 442 U.S. at 514, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. Sandstrom's conviction was reversed because a reasonable juror could believe the instruction either created a conclusive presumption regarding intent, or that it placed a burden on the accused to prove lack of intent. The jurors were not told the presumption created was permissive; instead, "[i]t is clear that a reasonable juror could easily have viewed such an instruction as mandatory." *Ibid.*, 442 U.S. at 515, 99 S.Ct. at 2454, 61 L.Ed.2d at 45.

Several post-*Sandstrom* cases have considered its impact on prosecutions of worthless-check crimes. In *People v. Gray*, 99 Ill.App.3d 851, 55 Ill.Dec. 315, 426 N.E.2d 290 (1981), the defendant's conviction for "deceptive practices," a criminal offense arising from the issuance of worthless checks, was reversed because the trial court's charge to the jury was inadequate. In a fashion similar to I.C. § 18–3106, the applicable Illinois statute provided that failure to have sufficient funds with the bank when the check was issued was prima facie evidence of an intent to defraud. The trial judge read the statute to the jury, but did not explain the term "prima facie." The appellate court reversed Gray's conviction and explained:

> If a reasonable juror could have interpreted "prima facie" as a presumption to shift the burden of production or the burden of persuasion, or to have been conclusive, then there is a conflict with the overriding presumption of innocence afforded the accused in a criminal case. Thus, the failure to instruct the jury as to the nature of the presumption would

result in the deprivation of a fair trial. (Citing *Sandstrom*).

55 Ill.Dec. at 317, 426 N.E.2d at 292.

Similarly, the defendant's conviction for writing bad checks was reversed in *State v. Johnson*, 233 Kan. 981, 666 P.2d 706 (1983). Johnson's trial judge had instructed the jury that "the making, drawing, issuing or delivering of such check shall be prima facie evidence of intent to defraud.... As used in this instruction, 'prima facie evidence' is evidence that on its face is true, but may be overcome by evidence to the contrary." Even though prior Kansas decisions held a rebuttable statutory presumption to be a rule of evidence and thus constitutional, the court reversed Johnson's convictions because, under *Sandstrom*,

> the jury must be clearly instructed as to the nature and extent of the presumption and that it does not shift the burden of proof to the defendant. Any instruction which may reasonably lead the jury to believe that a presumption is conclusive or that the burden to disprove an element of the crime rests with the defendant is unconstitutional.

*State v. Johnson*, 666 P.2d at 711. Other cases reversing worthless-check convictions in like manner include *State v. Merriweather*, 625 S.W.2d 256 (Tenn.1981); *State v. Forrester*, 134 Ariz. 444, 657 P.2d 432 (App.1982); *State v. Adams*, 3 Ohio App.3d 50, 443 N.E.2d 1047 (Ohio App.1982).

▉ Our review of *Sandstrom* and its progeny reveals the following. A statutory presumption that is mandatory, i.e., that is conclusive proof of an element of the crime or that requires the accused to present rebuttal evidence thereby shifting the burden of proof, is unconstitutional. A permissive inference, that may be accepted or rejected by the jury, is constitutional. If a jury instruction simply identifies a permissible inference, constitutional due process requirements have been adequately fulfilled. *See State v. Williams*, 103 Idaho 635, 651 P.2d 569 (Ct.App.1982).

▉ We do not believe the instructions in this case, even as clarified, satisfied constitutional due process requirements specified in *Sandstrom*. A reasonable juror could conclude the presumption was mandatory, i.e., that the jury was obligated to find the state proved an intent to defraud, unless Hebner presented rebuttal evidence, by establishing that Hebner issued the worthless check. Accordingly, under *Sandstrom*, Hebner's conviction must be reversed and the case remanded for a new trial.

▉ Because a new trial for Hebner must be held, a brief discussion of appropriate jury instructions is in order. *State v. Merriweather, supra*, indicated the trial judge should instruct regarding an "inference" rather than a "presumption" created by presentation of an insufficient funds check, and also instruct that "there is no shifting of the burden of proof to the accused and that the triers of fact are free to draw or not to draw the conclusion of fraudulent intent or knowledge of insufficient funds from proof of dishonor of the check...." 625 S.W.2d at 258. *People v. Gray, supra*, suggested the term "prima facie" not be used to instruct the jury. We believe the recommendations in *Merriweather* and *Gray* result from reasoned analysis. The jurors must be clearly instructed about permissible inferences arising from presentation of a dishonored check—anything less does not satisfy the fourteenth amendment's due process requirement.

## II

Hebner also raises an evidentiary issue, concerning the foundation laid for the admission in evidence of dishonored checks other than the one for which she was on trial. Superficially, this issue might appear moot in light of our reversal of the conviction. However, because the same evidence may be offered on a new trial, we deem discussion of that issue appropriate.

After the prosecutor had presented proof that Hebner wrote and cashed the insufficient funds check for which she was on trial, the prosecutor offered in evidence, through an investigating police officer,

photocopies of sixteen other checks and one original check drawn on Hebner's bank account. All were purportedly signed by Hebner and drawn on Hebner's account while there were insufficient funds or credit with the bank to honor those checks. It has been held that evidence of other checks "unpaid for want of funds issued shortly after the one in question and when [the defendant's] depleted and exhausted account had not been replenished" may be admissible as relevant to the issue of intent to defraud in an insufficient funds check case. *State v. Sedam,* 62 Idaho 26, 34, 107 P.2d 1065, 1069 (1940). Hebner objected to introduction of these exhibits on the basis of a lack of foundation.[2] Although Hebner acknowledged the proffered checks had been drawn against her account, she contended the state was required to prove the identity of the maker of the checks before the exhibits could be admitted. Her objection was overruled and the exhibits were admitted.

■■■ We hold no error occurred. Prior to offering the seventeen checks in question, the court admitted, without objection from Hebner, the signature card for Hebner's bank account.[3] Also, the check for which Hebner was on trial had been admitted; counsel stipulated that this check had been drawn, and signed, by Hebner. Thus the jury had before it two exemplars containing signatures of Mary Hebner which were not disputed as genuine. We believe the genuineness of the signatures on the seventeen proffered checks did not have to be established before those exhibits were admissible. Under I.C. § 9–405(2) a writing may be authenticated by evidence of the genuineness of the handwriting of the maker. Once the genuine instruments had been admitted, "the genuineness of other offered writings alleged to be the work of the same author becomes a question for the trier of fact who may, but need not, be

assisted in this task by expert comparisons." E. CLEARY, McCORMICK ON EVIDENCE, 691 (1984). Stated in another way, the standard for establishing the genuineness of the second questioned document "requires only that the court admit [the] evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authentication or identification." 5 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 901(a)[01] at 16 (Supp.1983).

> [I]t is now generally recognized, in cases where an issue is raised of the genuineness of a written instrument or of a signature to an instrument, that proof of the genuineness of the writing or signature may be made by a comparison with other writings of the same person which are either admitted or proved to be genuine specimens, and which are submitted to the court and jury to enable them to determine the question by their own observation and judgment, without the aid of an expert witness.

29 Am.Jur.2d EVIDENCE § 806 at 895 (1967). *See also* IDAHO RULES OF EVIDENCE 901 (effective July 1, 1985). We hold the court did not err in admitting the seventeen proffered checks over Hebner's objection. Whether those exhibits portrayed checks actually drawn by Hebner was an issue of fact to be determined by the jury through comparison with the two admitted documents containing genuine Hebner signatures. Further authentication of the signatures on the proffered exhibits was not required for their admission in evidence.

The judgment of conviction is reversed. Case remanded for new trial.

BURNETT and SWANSTROM, JJ., concur.

---

2. Hebner did not question the secondary nature of these exhibits, as photocopies, nor the time frame within which the checks were written, spanning a five-month period surrounding the date of the check for which she was on trial.

3. *See* Annot., 41 A.L.R.2d at 606 (1955) (bank's signature identification cards used to determine authenticity of signatures to checks and other instruments purported to be signed by a customer).