John SMALLWOOD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2695.

Court of Appeals of Alaska.

Nov. 3, 1989.

---

Charlene A. Lichtmann, Anchorage, for appellant.

Ron Sutcliffe, Asst. Dist. Atty., James L. Hanley, Dist. Atty., Kenai, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

John Smallwood was convicted of theft in the third degree in violation of AS 11.46.-140. Smallwood was prosecuted on the theory that he was legally accountable for the conduct of his twenty-year-old, mentally retarded daughter, Patricia Smallwood. Alaska Statute 11.16.110 provides in part:

> *Legal accountability based upon the conduct of another: Complicity.* A person is legally accountable for the conduct of another constituting an offense if
>
> ....
>
> (3) acting with the culpable mental state that is sufficient for the commission of the offense, the person causes an innocent person or a person who lacks criminal responsibility to engage in the proscribed conduct.

Smallwood appeals his conviction, arguing that the court erred in taking judicial notice of the fact that Patricia Smallwood lacked criminal responsibility for the crime charged. We reverse.

At trial, Pay'N Save store detectives testified that they saw John Smallwood, his wife Janice, and Patricia pushing two shopping carts through the Pay'N Save store. The detectives observed the Smallwoods placing items from the store shelves into Pay'N Save bags in one of the carts. An infant in a car seat rode in the cart with the bags. Patricia Smallwood then pushed the cart containing the baby and the bagged merchandise out of the store into the parking lot. The elder Smallwoods proceeded to the checkout line and paid with a check for the items in the other cart. Patricia was stopped in the parking lot by a store detective and brought back into the store. The elder Smallwoods were also detained, and the family was taken into a back room of the store.

John Smallwood told the store detectives that he had given his wallet to his daughter when they separated, so that she could pay for the items in her cart. At some point when they were all in the back room, both detectives saw John Smallwood hand his wallet to Patricia. It is unclear whether this was before or after Smallwood stated that he had given Patricia his wallet before she left the store.

Originally, John, Janice, and Patricia Smallwood were all charged with theft in the third degree. However, both Patricia and Janice were found incompetent to stand trial based on psychological evaluations.

At trial, John's defense was that he had sent Patricia to the front of the store to pay for the items in her cart, so that she could then take the baby out to the car to change his diaper. Both John and Patricia testified that the bags into which she placed items had been in the cart when she got it. Patricia testified that she put the items into the bags so that they would not smother the baby who was also in the cart. They both testified that when the baby started crying, John gave Patricia his wallet and told her to pay for the items and then take the baby outside. Patricia testified that she had intended to pay for the items, but that it "slipped [her] mind" because the baby was crying and she wanted to get him out to the car. John testified that there had been other occasions when Patricia took items from stores without paying for them due to "mind lapse." Both Patricia and John testified that while they were in the back room of the store with the detectives, she handed him his wallet so that he could see that the money was still in it, and he then handed it back to her.

Just before Patricia was called as a defense witness, the trial judge gave the following instruction to the jury:

> I can take judicial notice of a number of things and among these are matters of common knowledge ... in this case I'm

taking judicial notice of a legal action that was taken in another case. And when I declare that the court will take judicial notice of a fact or event, you must accept my declaration as evidence and regard it as conclusively proved ... In this case I have taken judicial notice of the fact that Janice Smallwood and Patricia Smallwood have been found to be mentally incompetent under the law in relation to this case, and that they are not mentally culpable for purposes of holding them responsible for the crime of theft due to mental impairment.

The court repeated this instruction in its final charge to the jury. Smallwood argues that in giving this instruction the court violated the Alaska Rules of Evidence and usurped the jury's role of finding that all of the elements of the charge had been established beyond a reasonable doubt. Neither of these objections were raised at trial.

Alaska Evidence Rule 201 governs judicial notice of facts. Subsection (b) of Rule 201 states:

*General Rule.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Evidence Rule 203 sets forth the procedure for taking judicial notice. Subsection (c) of Rule 203 states in part:

*Instructing the Jury.* In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but it is not required to, accept as conclusive any fact judicially noticed. ...

Smallwood argues that the judicial notice instruction was erroneous both because the "facts" noticed do not fall within Rule 201(b), and because the court instructed the jury that it must accept the judicially-noticed facts as conclusive, in violation of

Rule 203(c). The state concedes error on the second of these points.

■ Smallwood's first assignment of error is also correct. The court's taking judicial notice of the fact that Patricia had been found incompetent to stand trial appears to be permissible since this information is capable of accurate determination by resorting to court records, a source whose accuracy cannot reasonably be questioned.[1] However, the trial judge here went beyond noticing that a court had found Patricia incompetent to stand trial when he instructed the jury that Patricia was "not mentally culpable for purposes of holding [her] responsible for the crime of theft, due to mental impairment."

Court records may be an unquestionably accurate source of information as to the *content* of court orders, but often the propriety of the *substance* of a court order, and the accuracy of the findings upon which it is premised, can reasonably be questioned. In this case, a court's finding that Patricia was incompetent to stand trial did not conclusively establish that she was in fact "not mentally culpable" for the theft. There is a difference between a finding that a person is incompetent to stand trial and a finding that the person is "not mentally culpable" for theft. In addition, the standard of proof for determining competency to stand trial is proof by a preponderance of the evidence. *McCarlo v. State,* 677 P.2d 1268, 1272 (Alaska App. 1984). While it may in some cases be permissible for a court to take judicial notice of the substance of another court's findings, it is not permissible for a court to find that an element of a criminal charge, which must be established by proof beyond a reasonable doubt, has been adequately established by a finding based upon a mere preponderance of the evidence.

■ The trial court erred in taking judicial notice of the "fact" that Patricia Smallwood was not mentally culpable for the crime of theft, and then compounded this error by advising the jury that they

---

**1.** *See Lemon v. State,* 522 P.2d 160 (Alaska 1974). The defendant in *Lemon* was charged with escape. The supreme court upheld the taking of judicial notice of the fact that the defendant had been confined to custody by court order in another case.

must accept this fact as conclusively proven. However, since Smallwood never objected at trial on either of these grounds, we must determine whether the error rises to the level of plain error. *Van Hatten v. State*, 666 P.2d 1047 (Alaska App.1983). An error is reviewable as plain error only if it affects a substantial right and is obviously prejudicial. *Id.* at 1055.

In order to convict Smallwood, the jury had to find that he had caused an innocent person, or a person who lacked criminal responsibility, to commit a theft. AS 11.-46.140. It is clear that the court's error in taking conclusive judicial notice of an element of the charge affected a substantial right of Smallwood's: the right to be convicted only upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *See Sandstrom v. Montana*, 442 U.S. 510, 520, 99 S.Ct. 2450, 2457, 61 L.Ed.2d 39 (1979); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–1073, 25 L.Ed.2d 368 (1970). The state concedes that the court committed an error of constitutional dimension. This concession is supported by the case law.[2]

The state argues that the court's error, while substantial, is not grounds for reversal under the plain error rule because it was not obviously prejudicial. The measure of obvious prejudice under the plain error rule is "whether it can fairly be said that the alleged error did not appreciably affect the jury's verdict." *Van Hatten*, 666 P.2d at 1057. The state points out that Smallwood's defense did not depend upon a finding that Patricia was mentally competent, and contends that Smallwood's trial attorney, as a matter of strategy, virtually stipulated to Patricia's incompetence. The state's argument is well-founded. Smallwood's defense, that he intended for Patricia to pay for the merchandise in her cart, is not materially affected by a finding that Patricia lacks criminal responsibility for her conduct. Furthermore, Smallwood's defense depended in part on Patricia's disability. Smallwood testified that Patricia had a learning disability and that on other occasions she had failed to pay for store merchandise due to "mind lapse or whatever it is." In his final argument, Smallwood's counsel referred twice to Patricia's disability. He argued that it was unlikely that Smallwood would "try to get a mentally deficient daughter to ... pull off a scheme" when he knew that store detectives were watching him. Defense counsel also referred to incidences when Patricia failed to pay for store items in the past, which he attributed to her "mental deficiency."

However, even given the defense's apparent indifference to the issue of Patricia's mental culpability, we do not believe it can be fairly said that the error did not appreciably affect the jury's verdict. The court's instruction essentially directed a verdict for the prosecution on one of the essential elements of the charge. "[T]he error in such a case is that the wrong entity judged the defendant guilty." *Rose*

---

**2.** *See, e.g., United States v. Mentz*, 840 F.2d 315 (6th Cir.1988) (trial court committed constitutional error in case charging robbery of FDIC-insured banks when it took judicial notice that the banks robbed were FDIC-insured); *United States v. Argentine*, 814 F.2d 783 (1st Cir.1987) (court committed constitutional error when, in response to a question from the jury, the court referred to disputed facts as if they had been conclusively established); *United States v. White Horse*, 807 F.2d 1426 (8th Cir.1986) (court committed constitutional error in case charging embezzlement from an Indian tribal organization, when it took judicial notice that the telephone company from which money was taken was a tribal organization).

In related cases, it has been held that the application of conclusive evidentiary presumptions in criminal cases is constitutional error.

*See, e.g., Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *State v. Hebner*, 108 Idaho 196, 697 P.2d 1210 (App. 1985). One Alaska case, *Huff v. State*, 598 P.2d 928 (Alaska 1979) appears to follow a somewhat different rule. The court in *Huff* found no reversible error in the trial court's taking judicial notice of the fact that purchase money given to a realty agent as part of a sales transaction did not belong to the agent. This fact was an essential element of the crime charged, embezzlement. While it criticized the trial court's decision to give the judicial notice instruction, the court found no reversible error. The court distinguished this case from other judicial notice cases on the basis that the fact judicially noticed was decided by statute. The court also found that the error was harmless. *Id.* at 935.

*v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986).

In *Rose v. Clark* the Supreme Court allowed the application of a harmless error standard when the trial court erroneously instructed the jury that there was a rebuttable presumption that any homicide was malicious. Malice was an element of the offense charged, second-degree murder. However, the Court recognized that there were some errors that necessarily rendered a trial fundamentally unfair (*e.g.*, complete denial of the right to counsel, adjudication by a biased judge), and that harmless error analysis was thus inapplicable to such errors. *Id.* at 577–78, 106 S.Ct. at 3105–06. The Court included directed verdicts for the prosecution among those errors so fundamental that reversal was mandated. *Id.* at 578, 106 S.Ct. at 3106. The rebuttable presumption instruction given in *Rose* was not equivalent to a directed verdict for the state, however:

> Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue.

*Id.* at 580 n. 8, 106 S.Ct. at 3107 n. 8 (quoting *Connecticut v. Johnson*, 460 U.S. 73, 95 n. 3, 103 S.Ct. 969, 982 n. 3, 74 L.Ed.2d 823 (1983)). In the present case, the erroneous instruction did prevent the jury from considering the issue of Patricia Smallwood's criminal responsibility for her actions.

We are also guided by the decisions of two federal circuit courts, interpreting *Rose v. Clark* to mean that harmless error principles should not be applied to a jury instruction which conclusively establishes an essential element of the crime charged. *See United States v. Mentz*, 840 F.2d 315 (6th Cir.1988); *United States v. White Horse*, 807 F.2d 1426 (8th Cir.1986).

The defendants in *White Horse* were charged with knowingly converting the funds of an Indian tribal organization, in violation of 18 U.S.C. § 1163 (1982). The Eighth Circuit Court of Appeals ruled that the trial court committed reversible error in instructing the jury, as a matter of law, that the Cheyenne River Sioux Tribe Telephone Authority was an Indian tribal organization. Citing *Rose v. Clark*, the court held:

> In the present case, the judge's instructions to the jury deprived the jury of the ability to determine whether the facts essential to appellants' convictions were established by the evidence beyond a reasonable doubt. This was harmful error. Appellants were deprived of their full constitutional right to a jury trial, and their convictions must accordingly be reversed.

*White Horse*, 807 F.2d at 1432 (citation omitted).

In *Mentz*, one of the essential elements of the charge of bank robbery was that the deposits of the financial institution robbed were insured by the Federal Deposit Insurance Corporation (FDIC). 18 U.S.C. § 2113(f). The trial court instructed the jury that the banks Mentz was accused of robbing were insured by the FDIC. The Court of Appeals for the Sixth Circuit reversed Mentz's conviction, holding:

> In the instant case, the error cannot be deemed harmless. By placing a judicial imprimatur on the government's proof with respect to an element of the offense, the faulty instruction directed a partial verdict for the prosecution, ensuring that the jury would not find all elements beyond a reasonable doubt. This is a far cry from the rebuttable presumption at issue in *Rose v. Clark*, which did not remove the element of malice from the jury's consideration. Instead, this is a case where the "wrong entity judged the defendant guilty," thereby rendering the trial fundamentally unfair ...

*Mentz*, 840 F.2d at 324 (citation and footnote omitted).

We are persuaded that the reasoning of these cases should be applied to the present case. By instructing the jury that it had been conclusively proven that Patricia Smallwood was not mentally culpable for the theft, the trial court relieved the state of its burden to establish, and the jury of its duty to find, that every essential element of the charge had been proven be-

1005

yond a reasonable doubt. This rendered Smallwood's trial fundamentally unfair, and eliminates the need for further inquiry into the prejudice stemming from the court's error.

The conviction is REVERSED.